MAE WOLFE, administratrix, vs. CHECKER TAXI COMPANY.

Suffolk.     January 7, 1937. — January 31, 1938.

Present: RUGG, C.J., DONAHUE, LUMMUS, & QUA, JJ.

*Proximate Cause. Evidence*, Hospital record, Presumptions and burden of proof.

Negligence of the operator of a taxicab properly could have been found to have been the proximate cause of a laceration of the tongue of one in an automobile against which a pushcart of a pedler was forced when struck by the taxicab; and medical testimony that death resulted from infection caused by germs already present in the mouth entering the laceration in the tongue warranted a finding that such negligence was the proximate cause of the death.

The plaintiff in an action of tort was not bound by all entries in a hospital record put in evidence by him; entries unfavorable to him might be proved untrue by other evidence.

TORT. Writ in the Superior Court dated January 22, 1932.

The case was tried in the Superior Court before *M. Morton*, J., and in this court was submitted on briefs.

*F. S. Deland*, for the plaintiff.

*J. F. Cavanagh*, for the defendant.

DONAHUE, J. The plaintiff, as administratrix of the estate of her husband, brought this action to recover damages for his death and conscious suffering alleged to have been caused by negligence of an employee of the defendant in the operation of a taxicab. At the close of the plaintiff's evidence a judge of the Superior Court directed a verdict for the defendant. He reported the case to this court on a stipulation of the parties to the effect that if the case should have been submitted to the jury there is to be a new trial, otherwise judgment is to be entered for the defendant.

The evidence relating to the issue of negligence of the defendant's employee is here summarized. Between eleven and twelve o'clock at night on November 21, 1931, the plaintiff's intestate, who was a sergeant of police of the city of Boston, was seated beside the driver in a "police car"

which was headed in an easterly direction and stopped at the southerly curb of Merrimac Street near its intersection with Pitts Street in the city of Boston. A taxicab owned by the defendant and operated by its employee, proceeding in a westerly direction on Merrimac Street at the rate of thirty to forty miles per hour, "swaying" and following a zigzag course for a distance of one hundred feet from the standing police car, struck a pedler who was propelling a pushcart along Merrimac Street, also in a westerly direction. There was an arc light near the point of collision, but the operator of the taxicab saw neither the pedler nor the pushcart and did not know there had been a collision until someone brought it to his attention. There were also three pedestrians in the vicinity of the police car. There was evidence warranting a finding that as a result of the collision the pushcart was forced against the police car breaking a window on the left side.

There was evidence sufficient to warrant a finding by the jury that the taxicab of the defendant was operated in a negligent manner. *Griffin* v. *Feeney*, 279 Mass. 602, 604. *Arnold* v. *Colbert*, 273 Mass. 161, 163–164. *Gray* v. *Batchelder*, 208 Mass. 441, 442. The defendant contends that, even though this be so, a finding that a causal relation existed between the negligence of the operator of the taxicab and an injury to a person in the police car would not be justified. We are not here concerned with the intervening conduct, negligent or not, of a third person. Compare *Morrison* v. *Medaglia*, 287 Mass. 46. No conduct of a third person intervened between the negligence of the operator of the taxicab and the contact of the pushcart and the police car. Force, originating in the negligent operation of the taxicab, was communicated successively to the pedler, to the pushcart and to the police car. The connection between the negligence and the impact on the police car was uninterrupted and direct. "The active efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started and working actively from a new and independent source is the direct and proximate cause . . . ." *Lynn Gas & Electric Co.* v. *Meriden*

*Fire Ins. Co.* 158 Mass. 570, 575.   *Slater* v. *T. C. Baker Co.*
261 Mass. 424, 425.   *Gordon* v. *Bedard,* 265 Mass. 408, 412.
*Wallace* v. *Ludwig,* 292 Mass. 251, 254.   Even though it
could not have been foreseen that, by the negligent conduct
of the defendant's employee, a particular person would be
hurt, or that injury would be inflicted in a precise manner, a
finding was here warranted that such negligence was the
proximate cause of an injury received by a person in the
police car when it was struck by the pushcart.   *Ogden* v.
*Aspinwall,* 220 Mass. 100, 103.   *Burnham* v. *Boston & Maine
Railroad,* 227 Mass. 422, 426.   *Guinan* v. *Famous Players-
Lasky Corp.* 267 Mass. 501, 517.   *Perlman* v. *Burrows,* 270
Mass. 182, 184.   *Texeira* v. *Sundquist,* 288 Mass. 93, 94.

The defendant further contends that there was no war-
rant on the evidence for finding that the decedent in fact
received any injury when the pushcart came in contact
with the police car.   The evidence on this aspect of the
case is here recited.   The decedent was, at the time, seated
in the police car, talking with a person who was standing
on the sidewalk.   The operator of the taxicab shortly after
the collision saw the decedent wiping blood from his mouth.
When the decedent arrived home the next morning his
tongue was bleeding.   Various witnesses testified as to
statements made by the decedent during the week follow-
ing the accident, in substance that he had an accident on
the night of November 21, 1931, in which a taxicab of the
defendant was involved, that in the accident he "bumped
his mouth" and "bit his tongue"; and testified that he
showed them his tongue which had a "white blotch" on it.
He told physicians who were attending him that "as a
result of an automobile accident he bit his tongue severely"
. . . "while in a police car."   One of the physicians testified
that the laceration of the tongue which he saw indicated a
severe bite which was the result of external force over
which the decedent had no control.

The foregoing evidence, taken with the evidence earlier
recited as to the collision of the pushcart and the police
car, warranted the inference that the force of the impact
of the two vehicles was such as to cause the decedent's

mouth to come in contact with some part of the police car near where he was seated, with the result that he bit his tongue.

The defendant also contends that, even if negligence of the operator of the taxicab could properly be found to have made the decedent bite his tongue, a causal connection between that injury and his death in a hospital ten days later was not justified by the evidence. Entries in the hospital record gave support to this contention of the defendant. But, although the plaintiff introduced the record in evidence, she was not bound by the entries therein. *Kelley v. Jordan Marsh Co.* 278 Mass. 101, 111. *Newman v. Levinson,* 266 Mass. 264, 266. Those entries were contradicted in essential particulars by medical testimony introduced by the plaintiff.

There was evidence that during the week following the accident the decedent was ailing, and that at the end of the week his tongue was greatly swollen and he talked with difficulty. At that time he was attended by two physicians who ordered him removed to the hospital. They were the only physicians who testified at the trial. The medical testimony included the following matters of fact and of opinion. There was a laceration about an inch and a half long and three eighths of an inch wide on the side of the decedent's tongue where the swelling was the greatest. His condition showed that there had been an injury to his tongue with resulting infection. The time of the appearance of acute trouble would depend upon the time when the wound was infected. The human mouth contains germs which are harmless unless there is an opening through which the germs enter the body. The infection in the system of the decedent came from germs entering through the lacerated wound in his tongue. The swelling of the tongue was the result of the infection and the infection caused his death.

If the expert testimony of the physicians is accepted as true, there was in fact a causal relation between the negligence of the defendant's employee injuring the decedent's tongue and his death through germs entering his body by

way of the wound and creating an infection. We think that a finding was warranted that negligence of the defendant's employee was the proximate cause of the decedent's death. There was no break in the chain of events between the negligent origin of the wound and the death. The wound was an open door to the germs causing the death, which were impotent without a means of entrance.

It is a fair inference from the medical testimony that germs of the character of those causing the infection were present in the decedent's mouth at the time of the accident. In *Larson* v. *Boston Elevated Railway*, 212 Mass. 262, recovery was had against a negligent defendant where tuberculosis latent in a person at the time of the accident was thereby made active and harmful. It is not, however, essential to a finding of proximate cause that germs, producing infection and death of the decedent, were present in his mouth at the time he received the wound to his tongue. In *Wallace* v. *Ludwig*, 292 Mass. 251, recovery was had where germs, entering a person's body long after injury, by reason of a susceptibility to disease thereby created, caused death.

Where there has been no intervening act or negligence, so far as respects proximity of cause we think that infection and death, resulting from the entry of germs into the system of a person through an open wound negligently caused, stand no differently than infection and death caused by germs entering the body and there becoming operative by reason of the weakened condition of the body due to negligence.

Since we hold that the case should have been submitted to the jury, in accordance with the stipulation of the parties, there is to be a new trial.

*So ordered.*